Nathan Anderson
Barber & Borg, LLC
Arizona State Bar no.: 029448
Attorneys for the Plaintiffs
P.O. Box 30745
Albuquerque, New Mexico 87190-0745
505-884-0004
nathan@barberborg.com

Scott E. Borg
Barber & Borg, LLC
P.O. Box 30745
Albuquerque, New Mexico 87190-0745
505-884-0004
scott@barberborg.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

GLORIA NATONABAH and PETER NATONABAH,
individually and as grandparents and legal guardians
to SUZANNE FRANCISCO, deceased,

    Plaintiffs,

vs.                                                                                   No._____

THE UNITED STATES OF AMERICA,

    Defendant.

**COMPLAINT UNDER THE FEDERAL TORT CLAIMS ACT FOR WRONGFUL DEATH DUE TO MEDICAL NEGLIGENCE**

Plaintiffs, Gloria Natonabah and Peter Natonabah, aver for their complaint the following:

1. Plaintiffs Gloria Natonabah and Peter Natonabah, are the grandparents and legal guardians of the decedent. They reside on the Navajo Indian Reservation in Window Rock, Arizona.

2. Plaintiffs bring this civil action for compensatory damages arising from the negligence of employees/personnel at the TseHootsooi Medical Center ("THMC") located in Ft. Defiance, Arizona, a facility operated by the United States through the Department of Health and Human Services and the Indian Health Service.

**JURISDICTION AND VENUE UNDER THE FEDERAL TORT CLAIMS ACT**

3. Plaintiffs' claims in this action are authorized by and are brought pursuant to the provisions of the Federal Tort Claims Act (FTCA), 28 U.S.C. §1346(b) and 28 U.S.C. §2671, *et seq.,* and also pursuant to 28 U.S.C. §1331.

4. Federal statutes, including the FTCA, vest this court with exclusive jurisdiction over plaintiffs' claims in this case.

5. The FTCA makes the United States liable for the negligent acts and omissions of federal "employees."

6. Federal employees include, but are not limited to, employees of the Indian Health Service and the THMC.

7. At all times material to this case defendant United States controlled, owned, and operated THMC.

8. THMC provides medical care to Native Americans who are members of recognized tribes pursuant to various federal statutes and other law.

9. At all times material to this case defendant United States, acting through the Indian Health Service, held itself out to have the ability to provide medical care to members of the Navajo Nation and plaintiffs at its THMC, including the ability to address decedent's medical and psychological health problems.

10. Plaintiffs' through legal counsel presented to the Department of Health and Human Services in October, 2015, a timely administrative claim under the FTCA alleging negligence by federal employees at THMC in the provision of medical care to decedent. (Exhibit 1).

11. As contemplated by statute, defendant has had more than six months to investigate plaintiffs' claim and to attempt settlement with plaintiffs.

12. By statute, a claim presented under the FTCA is deemed denied by the United States six months after it is presented, and plaintiffs are then authorized to file a lawsuit against the United States.

13. Despite plaintiffs providing defendant with all documentation requested, defendant has not attempted to settle with plaintiffs and has not denied their claim.

14. Plaintiffs have now exhausted their administrative remedies as required by the FTCA.

15. Plaintiffs are authorized by statute to file this action in the United States District Court for the District of Arizona.

16. Plaintiffs are tribal members of the Navajo Nation. At all material times, decedent was also a tribal member of the Navajo Nation. Both plaintiffs and decedent at all material times resided in or near Window Rock, Arizona.

17. Venue is proper in this district under 28 U.S.C. §1402(b).

**FACTUAL BACKGROUND**

18. On February 4, 2015, Suzanne Francisco was brought to the THMC emergency room by school guidance personnel and plaintiff Gloria Natanobah. Guidance

personnel at the school received information from a concerned, unidentified parent at the school indicating Suzanne had communicated with her daughter about suicidal thoughts and seemed to have possible intentions to commit suicide.

19. Suzanne went to the ER with an infected 2 cm laceration and an infected 1.5 cm laceration to her right wrist and multiple non-infected lacerations to her left wrist and arm.

20. The emergency room nurse noted that Suzanne was tearful, anxious, and refused to answers questions when asked about suicidal ideation and attempts to commit suicide.

21. Dr. Frank P. Ammesmaki, the emergency room physician, noted in the medical record timed at 14:06 (2:06 p.m.), that Suzanne reported she was attempting to kill herself. Dr. Ammesmaki treated Suzanne's physical injuries and consulted with Lafe Damon from the behavioral health department.

22. Lafe Damon noted in his medical record, timed at 18:52 (6:52 p.m.), and signed at 19:24 (7:24 p.m.), the following:

    a. "...was brought to ER because of SI issues. Apparently she was at school and the school stated that she attempting to kill herself."
    b. "...I asked why she was cutting herself and she stated that the cuts on wrists happen a while ago but she couldn't remember when and according to ER doc that was true it did not happen today."
    c. "We talked about why she was cutting herself and she stated that it makes her feel a little better. She has been cutting herself for about 1 yr in half and learned to cut self from a friend."
    d. "Asked again why and she told me that it because of school and that she is getting behind and not sure how to catchup."
    e. "...she is feeling overwhelmed with school and also she sometimes gets tease at school. She also mentioned that she has an older brother who she worries about. He lives with his grandfather...apparently a few months ago pt. was down with her

4

brother and he left her by herself and she panic and called grandmom to pick her up."

        f.    "Pt. told me about her family and that her father killed himself this according to the FBI report.  Her mother has a hard life a lot of different relationships and social services have been involved in her life."

        g.    "...mom abandoned her daughter with an ex boy-friend in Navajo and pt's mom when to phx.  When grandma founded pt., she was living with the old boy friend and the house pt. was living in was a party house."

23.    Lafe Damon's assessment of Suzanne included the following narrative:

        a.    "Pt. and I talked about if she went home if she would cut herself again and she stated no.  I also s/w grandma and she stated that she would watch her to make sure she is ok.  She stated that pt's older brother tried to kill himself once while living with her.  He overdozed on her pills.  There is a family hx of si issues.  Presently, pt. does not pose risk to self or others.  Should conditions worsen return to clinic both pt. and grandmom voiced understanding.  Told them to come see tomorrow for follow up.  I let ER doc know she can go home."

24.    Suzanne was then discharged.  The ER note was signed off by Lafe Damon's supervisor the next day, February 5, 2015, at 7:33 a.m.

25.    On February 5, 2015, at 12:25 p.m., Suzanne and plaintiff Gloria Natonabah returned to the THMC outpatient clinic and saw Lafe Damon for a 25 minute follow up visit.  During the 25 minute visit, Mr. Damon indicated that Suzanne denied suicidal ideation, homicidal ideation, auditory and visual hallucinations, grandiose or paranoid delusions or ideas of reference.  He also indicated that her judgment and insight was "ok."  This note was not signed by Mr. Damon until the next day, February 5, 2015, at 9:04 a.m., and his supervisor also signed off on this note February 6, 2015, at 19:15 (7:15 p.m.).

26.    On February 6, 2015, at 17:39 (5:39 p.m.), Suzanne was brought to THMC emergency room by ambulance after plaintiff Gloria Natanobah and other family members found Suzanne hanging from a tree.  When EMS arrived on scene, they found

5

Suzanne unconscious, unresponsive, not breathing, and pulseless. Emergency staff was unable to revive Suzanne and code was called at 17:50 (5:50 p.m.).

CAUSE OF ACTION - DUTY, NEGLIGENCE, AND CAUSATION

27. Plaintiffs repeat the averments stated in the preceding paragraphs and incorporate them by reference as part of their first count of negligence.

28. The United States is legally responsible for the negligent actions of its THMC staff, including employees of THMC, while those employees are performing job duties for the employer or engaged in furtherance of the interests of the employer.

29. The involved staff who participated in the medical care of decedent at THMC were employees of the Indian Health Service at all pertinent times as to Suzanne Francisco's health care in the two day period prior to her death.

30. Those employees were on the job performing job-related duties for THMC at the time they were engaged in providing healthcare to Suzanne Francisco on February 5-6.

31. If any negligent THMC staff were not actual employees of the Indian Health Service at the time of the incident, they may have been contract employees whose contracts with the defendant provide that the defendant is liable under the Federal Tort Claims Act for their negligence.

32. If any negligent THMC staff were not actual employees of the Indian Health Service at the time of the incident, they may have been contract employees whose own or their employers' contracts with the defendant may be deemed by statute or federal regulation to make the defendant liable under the Federal Tort Claims Act for their

negligence.

33. If any negligent THMC staff were not actual employees of the Indian Health Service at the time of the incident, and the preceding paragraphs 29-32 do not apply, they may have been contract employees for whom the defendant is vicariously liable under the Federal tort Claims Act pursuant to the doctrines of law such as agency and *respondeat superior*.

34. Defendant had a duty to exercise reasonable care in the diagnosis and treatment of Suzanne Francisco, and to possess and use the degree of skill and learning ordinarily used in the same or similar circumstances by members of their professions in the provision of healthcare.

35. The involved staff breached the duty of reasonable care that was owed to Suzanne Francisco and are guilty of the following negligent actions and omissions by failing to measure up to the applicable standards of care, skill, and practice required of members of their profession, to wit:

a. failure to provide intervention in order to provide for Suzanne Francisco's safety;

b. failure to adhere to professional standards of care of at-risk patients;

c. failure to evaluate risk factors associated with Suzanne Francisco's mental state from history provided, mental state specifically from February 4, 2015, through February 6, 2015, and her mental state by family history;

d. failure to evaluate protective intervention to mitigate suicide risk;

e. failure to assess Suzanne Francisco thoroughly upon presentation to the

emergency room on February 4, 2015;

  f. failure to realize that simply asking Suzanne Francisco "why" she cut herself and if she would do so again were inadequate and negligent assessments;

  g. failure to address during Suzanne's assessment significant factors of risk – i.e., her degree of psychological pain, rate of agitation, degree of hopelessness, sense of self-hate, suicide preparation or rehearsal behavior, and culture factors;

  h. failure to be aware of and act on the fact that Native American teenagers have a significantly higher suicide rate than non-Indians;

  j. failure to realize that, following his own diagnosis of Suzanne Francisco with Major Depressive Disorder with psychotic features, Lafe Damon, an employee of defendant, only spent 52 minutes for the entire evaluation, assessment, and intervention before discharging Suzanne, and then only spent 25 minutes with Suzanne Francisco the following day during a follow up visit;

  k. failure to note what "psychotic features" Suzanne Francisco was experiencing on February 5, 2015;

  l. failure to realize that when a patient is diagnosed with "psychotic features" their sense of reality, judgment, intentions, etc., are severely compromised;

  m. failure of Lafe Damon, an employee of defendant, timely to consult with his supervisor after making such a grave diagnosis of Suzanne Francisco, and then releasing her from care; and,

  n. negligently and carelessly failing to measure up to the requisite standards of care and skill recognized and observed in the field of social work and related fields, while

8

performing care or engaged in caring for decedent, and in further particulars that at this time are not known to plaintiffs as to the specific facts, but which are believed and hereby alleged will be disclosed during discovery in the course of the litigation.

36.     The negligent actions and omissions of the THMC staff for their failure to diagnose and treat decedent in the time period of February 4, 2015, and February 5, 2015, caused decedent's death and were actions and omissions for which the United States would be liable to plaintiffs for negligence under the laws of the State of Arizona, the place where the incident occurred, if the United States were a private individual at fault for the same negligence.

37.     At all times material hereto, decedent was a patient of the Indian Health Service, an agency of the United States Department of Health & Human Services, and was in the care and custody of THMC and involved staff, completely dependent upon the government, the hospital, and the hospital staff for her medical care.

38.     Defendant United States, acting through its employees, negligently failed to provide appropriate, reasonable, and required medical care to decedent, which gives rise to a negligence cause of action against defendant, as laid out herein.

39.     As a direct and approximate result of the negligence of defendant United States and its employees, and the staff at THMC, especially Lafe Damon, decedent died.

**DAMAGES**

40.     Under the FTCA and the law of the place of the wrong, the State of Arizona, plaintiffs are entitled to compensatory damages for their losses, both special and general, including damages for the loss of the value of life, funeral and burial expenses,

non-medical expenses incurred by plaintiffs, loss of value of household services, loss of companionship, love and affection, and other losses of consortium.  Defendant United States is liable to plaintiffs for their losses and hereby claims a right to recover all allowable damages recognized by Arizona, whether specifically mentioned herein or not.

## CONCLUSION

**WHEREFORE**, plaintiffs pray for the court to enter judgment for them, individually, and to order that they be compensated for all losses allowed or recognized by law, for an award of allowable costs, and for such other relief as recognized under the laws and rules that govern this case.

Respectfully submitted,

*/s/Nathan S. Anderson*
Barber & Borg, LLC
Attorneys for the Plaintiffs
P.O. Box 30745
Albuquerque, New Mexico  87190-0745
505-884-0004
nathan@barberborg.com


*/s/Scott E. Borg*
Barber & Borg, LLC
Attorneys for the Plaintiffs
P.O. Box 30745
Albuquerque, New Mexico  87190-0745
505-884-0004
scott@barberborg.com